IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS M. AGRÓN-BONILLA,

Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant

CIVIL 08-2111 (DRD) (JA)

OPINION AND ORDER

On September 29, 2008, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied his application for a period of disability and Social Security disability insurance benefits.  The defendant filed a memorandum in support of the final decision on July 6, 2009 (Docket No. 11 ) and plaintiff filed a memorandum against such final decision on June 19, 2009.  (Docket No. 10.)

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole.  In order to be entitled to such benefits, plaintiff must establish that he was disabled under the Act at any time on or before December 31, 2006, when he last met the earnings requirements for

CIVIL 08-2111 (DRD)                    2

disability benefits under the Social Security Act.   See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

After evaluating the evidence of record, the administrative law judge entered the following findings on January 22, 2007:

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.
> 2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 19, 2001 through his date last insured of December 31, 2006 (20 CFR 404.1520(b) and 404.1571 et seq.).
> 3.  Through the date last insured, the claimant had the following severe impairments: arterial hypertension, diabetes mellitus, osteoarthritis, and major depressive disorder (20 CFR 404.1520(c)).
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
> 5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to stand and walk for about 6 hours and sit for about 6 hours daily in an 8 hour work day, lift and carry a maximum of 50 pounds and 25 pounds frequently and to otherwise function normally in activities not requiring frequent performance of complex tasks, nor frequent contact with others.
> 6.  Through the date last insured, the claimant's past relevant work as WAD printing machine operator did not require the performance of work-related

CIVIL 08-2111 (DRD)                     3

>           activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>       7.  The claimant was not under a "disability," as defined in the Social Security Act, at any time from April 19, 2001, the alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(f)).

Tr. at 23-27.

Plaintiff has the burden of proving that he has become disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137 (1987). A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months.  See 42 U.S.C. § 416(i)(1).  In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits. There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986).  Partial disability does not qualify a claimant for benefits.  See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965); Quintana v. Comm'r of Soc. Sec., 294 F. Supp. 2d 146, 148 (D.P.R. 2003).

The finding of the Commissioner reflects an application of step four of the sequential evaluation process.  See 20 C.F.R. § 404.1520(e).  At step four the

CIVIL 08-2111 (DRD)                    4

initial burden is on the claimant to show that he can no longer perform his former work because of his impairment(s).  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); see Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  Thence, the Commissioner must compare the physical and mental demands of the past work with the current functional capability.  See 20 C.F.R. § 404.1560(b).  At this stage, the administrative law judge is entitled to credit a claimant's own description of his former job duties and functional limitations but has some burden independently to develop the record. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d at 17; Santiago v. Sec'y of Heath & Human Servs., 944 F.2d at 5-6.

Plaintiff alleges disability since April 19, 2001 due to arthritis, diabetes mellitus, hypertension and depression.  Plaintiff had leg and knee pain, insomnia, forgetfulness and crying episodes.  Plaintiff has an eighth grade education and worked as a printing machine operator.  (Tr. at 73, 96.)  He stopped working on that date which coincided with the date in which the factory where he worked closed.  However, he already had his conditions at that time.  (Tr. at 87.)

During the covered period, plaintiff received medical treatment for his physical impairments with a general practitioner, Dr. Jesús Gómez.  (Tr. at 211-20.)  He also had consultative neurological evaluations by Dr. Michael Babilonia Román (Tr. at 186-01) and Dr. Eleuterio Loperena Jiménez.  (Tr. at 238-52.)

CIVIL 08-2111 (DRD)                          5

Plaintiff cried during the entire interview with Dr. Loperena.  (Tr. at 238.)  A physical residual functional capacity assessment dated January 15, 2004 by internist Dr. Francisco Rodríguez de la Obra shows no significant exertional limitations, occasional postural limitations in the ability to climb, and no manipulative, visual, communicative, or environmental limitations.  (Tr. at 203-10.)  This assessment was later affirmed by Dr. José R. Pesquera García.  (Tr. at 210.)  Specifically an arthritis residual functional capacity questionnaire was filled out by Dr. Jesús V. Gómez Puche on March 11, 2004.  (Tr. at 213-17.)  Dr. Gómez Puche first examined plaintiff on July 21, 2003, and last examined him on September 13, 2003.  (Tr. at 218.)  The joint effected was the knee which was unstable, tender, and had muscle spasms.  Pain was experienced often.  Parts of the questionnaire appear to have been left blank.  There were occasional limitations in twisting, stooping, crouching, and climbing.  Plaintiff received treatment for his arterial hypertension and diabetes mellitus.  The doctor diagnosed depression, diabetes mellitus, anxiety and left knee arthritis with a poor prognosis.  (Tr. at 220.)  Plaintiff was also treated for a major depressive disorder.  Dr. Ariel Rojas Davis first saw plaintiff on December 4, 2002, and roughly on a monthly basis after that.  He diagnosed major depressive disorder.  Prognosis was poor.  A psychiatric review technique form made on October 24, 2003 by clinical psychologist Dr. Jeanette Maldonado, Ph. D., reflects the presence of an affective

CIVIL 08-2111 (DRD)                     6

disorder characterized by the presence of depressive syndrome including sleep disturbance, psychomotor agitation or retardation, difficulty concentrating, thoughts of suicide, poor judgment, poor short term memory. (Trat 168-81.) A mental residual functional capacity assessment by Dr. Maldonado dated the same day generally shows no more that moderate limitations in understanding and memory, sustained concentration and persistence, social interaction and adaptation. Plaintiff is found markedly limited in the ability to carry out detailed instructions. (Tr. at 182-84.) The assessment was affirmed by clinical psychologist Dr. Lilliam González Ortiz, Ph.D., on August 4, 2004. (Tr. at 183.) The basis for the functional capacity assessment is explained well beyond the filling in of boxes. (Tr. at 184.) Internist Dr. Michael Babilonia Roma conducted an evaluation of plaintiff on December 3, 2003. The diagnosis was osteoarthritis and Type II diabetes. (Tr. at 194.) A mental impairment questionnaire was filled out by Dr. Ariel Rojas Davis on March 12, 2004. (Tr. at 223-29.) Plaintiff's symptoms were anhedonia, weight change, decreased energy, suicidal thoughts, guilt feelings, somatic complaints, mood disturbance, difficulty concentrating, psychomotor agitation, memory impairment and insomnia. Response to treatment was poor. Dr. Rojas Davis in general painted a bleak picture of plaintiff's ability to meet competitive standards to understand, remember and carry out detailed instructions, set realistic goals and deal with the stress of skilled

CIVIL 08-2111 (DRD)                    7

and semi-skilled work.  (Tr. at 226.)  Dr. Rojas Davis felt plaintiff had a marked degree of functional limitation in restriction of daily living activities and maintaining social functioning.

The administrative law judge determined that the objective medical evidence of record established the presence of medical impairments which could reasonably be expected to cause the symptoms alleged, but not to the extent claimed by the plaintiff as reflected in the documents of record.  (Tr. at 26.)  The administrative law judge found that medium to heavy, complex work with certain limitations was precluded, but not of such frequency and intensity as to preclude certain medium, unskilled, simple work activity during the covered period.  The administrative law judge specifically found plaintiff had the residual functional capacity stand/walk/sit six hours in an eight-hour workday, to lift or carry 25 pounds frequently and function normally in activities not requiring frequent performance of complex tasks nor frequent contact with others.   The administrative law judge decided that the nature of the medical treatment received, the response to said treatment without adverse side effects, and by the absence of persistently disabling musculoskeletal, neurological and mental pathology through December 31, 2006, reflected the absence of disabling limitations in terms of frequency and intensity.  (Tr. at 26.)  The administrative law judge found that plaintiff's past relevant work as a printing machine operator

CIVIL 08-2111 (DRD)                    8

did not require the performance of work-related activities precluded by his residual functional capacity.

Plaintiff argues that the decision of the Commissioner is not supported by substantial evidence, primarily because the record reflects that he cannot perform his past relevant work and therefore the burden shifted to the Commissioner that there were jobs in the national economy which plaintiff could perform.   Plaintiff argues that the administrative law judge committed error in deciding that plaintiff was capable of performing his past relevant work as generally performed, and that such a conclusion lacked any supporting specificity.  He argues that the state medical consultants did not examine plaintiff but more importantly, they did not provide specific reasons for the opinions about plaintiff's residual functional capacity.  Consequently, the plaintiff argues that the administrative law judge's decision is not supported by any relevant residual functional capacity, and that the administrative law judge lacks the expertise to translate raw medical data into functional terms.  Plaintiff argues that based upon the evidence of record, the administrative law judge should have given controlling weight to the assessment of his treating psychiatrist, Dr. Rojas Davis.   Plaintiff argues that the administrative law judge erred as a matter of law by refusing to hold a hearing which was requested and indicating that only written arguments would be allowed. The Commissioner states in his brief that plaintiff requested a waiver of a hearing

CIVIL 08-2111 (DRD)                    9

and that the decision be based on the review of the evidence.  (Docket No. 11, at 2.)  The statement of plaintiff which the Commissioner relies upon does not say that at all.   Plaintiff did not request a waiver of the hearing, but rather of his presence only, emphasizing he did not waive his right to have his attorney make statements at the hearing.  (Tr. at 40.)  Plaintiff argues this point extensively in his 26-page brief.  (Tr. at 10-12, 22-25.)  The Commissioner dedicated four lines of his brief to the "waiver of hearing", and then relates what happened at the hearing.  (Docket No. 11, at 2.)  If there was such a hearing, I would expect that a transcript or some minutes of the hearing would appear in the record.   It appears that the administrative law judge canceled the hearing on the date it was scheduled because plaintiff did not appear and had no medical reason or excuse for not showing up.  The rationale of the administrative law judge quotes plaintiff's waiver acknowledging that the decision would be based upon the evidence of record.   While the Commissioner's brief dedicates nothing to the issue, the administrative law judge himself dedicates almost three pages to the issue of the effects of waiver of appearance. (Tr. at 18-21.)  Thus it merits some discussion before entering into the plenary review of the findings within the rubric of the substantial evidence rule.

        In an adversarial proceeding, the concepts of notice and opportunity to be heard are seminal.   In a non-adversarial proceeding, those concepts are also

CIVIL 08-2111 (DRD)                    10

observed.   See, e.g., Stoner v. Sec'y of Health & Human Servs., 837 F.2d 759,

761 (6th Cir. 1988).  In this case, plaintiff received notice and an opportunity to

be heard and made a studied choice not to appear and testify.  Plaintiff is entitled

to  appoint  an  attorney  to  represent  his  interests  at  the  administrative

proceedings.  20 C.F. R 404.1705(a).  Nevertheless, testimony is the essence of

an administrative hearing.  Plaintiff did not waive his right to an impartial and

complete hearing.  (Tr. at 40.)  However, he chose to make it incomplete by his

absence.  The interpretation of the statute which gives the administrative law

judge the authority to summon a claimant to appear, and to make a decision on

the raw record without such appearance is reasonable, regardless of the argument

plaintiff presents.  Plaintiff was given an option to file his argument in written

memorandum form.  20 C.F.R. § 404.949.  In a court proceeding, evidentiary

hearings are the exception.  In these administrative proceedings, they are the

rule.  Plaintiff consciously waived his right to appear.  20 C.F.R. § 404.950(b).

That he insisted in arguing his case in front of the administrative law judge

contrary to the statutorily supported actions of the administrative law judge is

fostering the triumph of form over substance.  The mystery of what counsel would

have stated or might have written is lost to history.  Counsel did submit an eight

page brief before the Appeals Council.  (Tr. at 276-84.).  The Appeals Council

considered the same and summarily affirmed the decision of the administrative

CIVIL 08-2111 (DRD)                    11

law judge.  Finally, plaintiff has failed to make a showing how he was prejudiced by not having his attorney allowed to orally argue the case when he was given the option of preparing such arguments in writing.

While plaintiff has argued that greater weight should be given to the medical evidence from treating physicians, it is well settled that even the opinions of treating physicians are not necessarily entitled to greater weight merely because they are those of treating physicians.  Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Pérez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1, 2 (1st Cir. 1980); Rosado-Lebrón v. Comm'r of Soc. Sec., 193 F. Supp. 2d 415, 417 (D.P.R. 2002).  The administrative law judge is not always required to give such opinions controlling weight.  See 20 C.F.R. § 404.1527(d); Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987);  cf. Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221 (D.P.R. 2003).  Similarly the administrative law judge did not substitute his own opinion for uncontroverted medical evidence reflecting disability.  To the contrary, this is a case replete with contradictory evidence which lends itself to be evaluated by the administrative law judge and not by a reviewing court.  This case reflects a balancing and weighing of evidence as well as the making of credibility determinations by the administrative law judge.  The administrative law judge weighed plaintiff's subjective complaints

CIVIL 08-2111 (DRD)                    12

against the evidence in the record.  While not disregarding plaintiff's allegations, the judge weighed them against the lack of objective medical findings which would tend to support allegations, using a longitudinal analysis.

The emotional condition from which plaintiff suffers becomes objectively manifest in December 2002, when plaintiff began treatment with Dr. Rojas Davis. Plaintiff received conservative treatment for the same.  While the administrative law judge opined that the symptoms experienced by the plaintiff are limiting, he found them not severe enough to preclude past relevant work.  Plaintiff argues that the administrative law judge incorrectly weighed the requirements of plaintiff's past relevant work as simple and unskilled.  (Docket No. 10, at 27.) The administrative law judge described the type of job as simple, unskilled, and repetitive. (Tr. at 26.)  Plaintiff argues that the description clashes with plaintiff's own description as well as the description in the Occupational Outlook Handbook (2008-2009).  On September 5, 2003, plaintiff filled out Form SSA-3368.  (Tr. at 79-92.)  Plaintiff's description of his job as performed is as follows: "I worked at a printing shop where I was responsible for creating the design or shape (formats) of the documents that were to be printed.  This meant that I had to make all the notations on the worksheet in order to print them later on.  My boss gave us the work schedule and assigned me a duty (production) of 230,000.00 parts; I had to correct those forms that did not have numbers or did not have the correct

CIVIL 08-2111 (DRD)                    13

ones.  I had to prepare a report of the amount of work done.  Then I had to place them in boxes to be distributed to another production line."  (Tr. at 87.)  He stated that he used machines, tools or equipment and also used technical knowledge or skills.  He continued to describe his job as follows: "Yes, I had to lift and carry printing materials all the time such as printed material, and I had to verify the same; I had to put them in boxes.  This movement was constant because the printer was automatic and I could not stop it.  I had to carry the boxes but the distance was very short."  He frequently lifted 10 pounds and the heaviest weight he lifted was 50 pounds.  (Tr. at 88.)   In a work history report dated September 23, 2003, plaintiff noted that he did not use technical knowledge or skills.  (Tr. at 97.)  He noted that he lifted boxes every five minutes to put on the skid.  He described his job as follows: "I was standing up all day in front of the machine making sure that the machine was running right so that it didn't jam up.  Then I had to pack the forms in the box and put it on a skid."  (Tr. at 97.)  When it got full, then he would get a fork lift and take it to the stock room.  (Tr. at 103.)  In this form, he noted that he frequently carried 50 pounds or more.  (Tr. at 97.)  Plaintiff was contacted regarding the two different descriptions of the same work.  (Tr. at 117.)  On January 22, 2004, plaintiff told an examiner that most of the time his duties were to set the colors in the machine, put the numbers in order of appearance in the paper, start the machine, set the speed and ask for

CIVIL 08-2111 (DRD)                    14

authorization to do the work.  (Tr. at 117.)  He had to verify that the machine was doing right, check the headers and clean it when the process was finished.  The Occupational Outlook Handbook referred to by plaintiff in his brief discusses the varieties of printing machine operation.  It is a job that may be learned in training classes, or through on-the-job training.  It is clear from the three descriptions of the job of printing machine operator given by plaintiff by questionnaire and telephone as well as described in the Occupational Outlook Handbook that an operator's duties may vary from job position to job position, thus requiring different levels of skills, or none.  Notwithstanding plaintiff's emphasis that his description of his job (Tr. at 87-88) does not support the administrative law judge's conclusion of simple and unskilled and repetitive, the conclusion of the administrative law judge does not violate the substantial evidence rule and the record supports a finding that plaintiff's job as performed was simple, unskilled and repetitive.  Again, the administrative law judge is entitled to credit the plaintiff's own description of his limitations and former job duties, but is under some burden to independently develop the record.  See Manso-Pizarro v. Sec'y of Health & Human Servs, 76 F.3d at 17.  If the plaintiff has raised an issue of capability to perform, the administrative law judge must rely on medical evaluations, unless the extent of functional loss and its effect on performance would be apparent even to a lay person.  See id.  In developing the record, the

CIVIL 08-2111 (DRD)                    15

administrative law judge also relied on the physical and mental residual functional capacity assessments of record from non-treating physicians in reaching a decision which complies with the requirements of the substantial evidence rule. Those specialists elaborated on the basis for their assessments.  (Tr. at 184, 204, 208.)  Compliance with the substantial evidence rule does not require that the administrative law judge secure physical and mental physical residual functional capacity assessments from treating physicians.

The rationale of the administrative law judge is comprehensive, and even if I were to disagree with the final decision, I cannot find that the Commissioner's decision has failed to comply with the requirements of the substantial evidence rule.  There being no good cause to remand, the final decision of the Commissioner is affirmed and this action is dismissed.  The Clerk will enter judgment accordingly.

At San Juan, Puerto Rico, this 9th day of December, 2009.

S/ JUSTO ARENAS
Chief United States Magistrate Judge